# APPENDIX.

## AMERICAN ACADEMY OF ARTS AND SCIENCES *vs.* PRESIDENT AND FELLOWS OF HARVARD COLLEGE.

[Before SHAW, C. J., sitting in equity.]

A statute empowering this court "to hear and determine in equity any and all matters relating to" a particular gift for a specific charitable purpose to a corporation capable of receiving and holding it, "and to make all necessary or proper orders and decrees touching the same," confers all the authority of a court of general chancery jurisdiction, and, among other things, to permit such alterations in the mode particularly prescribed by the donor as will best promote his general intent, and for this purpose to refer the case to a master to report a scheme.

A gift designed to promote the public good, by the encouragement of learning, science and the useful arts, without any particular reference to the poor, is a charity.

A corporation which has once accepted a gift for charitable uses within the scope of its charter cannot afterwards renounce it.

A gift to trustees for specific charitable uses, if not accepted, does not revert to the donor's heirs or residuary legatees, but will be applied to the purposes of the charity, through new trustees.

If a gift, made in the lifetime of the donor to a corporation for specific charitable uses, cannot be applied in the exact mode prescribed by him, the property does not go to another corporation which he has made his residuary legatee for a similar charitable purpose; but is to be applied by the donee, under the direction of this court sitting in equity, in such a manner as to carry out the general charitable intent of the donor.

Charitable donations are to be liberally construed with a view to promote and accomplish the general charitable intent of the donor.

Where a gift for specific charitable uses, made to trustees capable of taking, cannot be applied precisely in the mode directed, the court of chancery interferes and regulates the disposition of the property according to the general intent of the donor, under its general jurisdiction on the subject of trusts, and not as administering a branch of the prerogative of the king as *parens patriæ*.

Where all the charitable objects specified by the donor in a gift to competent trustees have been satisfied, any surplus will be applied by the court to objects of a like kind, as nearly following his intent as practicable.

Count Rumford in his lifetime gave $5000 in stock of the United States to the American Academy of Arts and Sciences, in trust to pay the interest biennially as a premium to the author of such discovery or improvement on heat or light, published in America during the preceding two years, as should in their opinion tend most to promote the good of mankind; and to invest any unapplied income in the same manner, and add it to the principal, and proportionally increase subsequent premiums. By his will he bequeathed the residue of his estate to Harvard College, for the purpose of founding a

professorship to teach by lectures and experiments the utility of the physical and mathematical sciences for the improvement of the useful arts and the industry and wellbeing of society. It having become impracticable to carry out the intent of the donor in the mode prescribed for the application of the income and investment of the fund given to the Academy, *Held,* that Harvard College had no claim to any part of this fund or its accumulations; but that the Academy might, pursuant to a scheme reported by a master, and sanctioned by the court, award premiums at any annual meeting of not more than $600 each, for any such discovery or improvement previously made; and might appropriate the surplus of future income to purchasing such books, papers and philosophical apparatus, and making such publications, or procuring such lectures, experiments or investigations, as should in their opinion best facilitate and encourage the making of discoveries and improvements which might merit such premiums; and that the funds might be invested in different securities.

BILL IN EQUITY, under *St.* 1830, *c.* 90,* by the corporation established by the *St.* of May 4th 1780, *c.* 16, entitled " an act to incorporate and establish a society for the cultivation and promotion of the arts and sciences," alleging that in 1796 Benjamin Count Rumford, then residing in London in the kingdom of Great Britain, gave and transferred to the plaintiffs five thousand dollars in the three per cent. stocks of the United States, to the end that the same should be holden by them, and the income thereof be awarded by them biennially as a premium for the most important discovery or useful improvement on heat or light, which should be made and published by printing or otherwise in any part of the American Continent or in any of the Islands of America during the two years preceding such award, in the manner and under the directions expressed and contained

---

* " An act authorizing the Supreme Judicial Court to hear and determine in equity all matters relating to the donation of Benjamin Count Rumford to the American Academy of Arts and Sciences.

" Be it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, That the justices of the supreme judicial court be and they hereby are authorized and empowered to hear and determine in equity any and all matters relating to the donation of Benjamin Count Rumford to the American Academy of Arts and Sciences, and to make all necessary or proper orders and decrees touching the same." Approved March 16th 1831.

A like bill, filed at November term 1830, was dismissed after the filing of this bill. Under the *St.* of 1817, *c.* 87, the equitable jurisdiction of this court over trusts was limited to " cases of trust arising under deeds, wills, or in the settlement of estates." Compare Rev. Sts. *c.* 81, § 8 ; Gen. Sts. *c.* 113, § 2.

in a letter from the donor to the plaintiffs, a copy of which was annexed to the bill, and is printed in the margin; * that no other

* To the Honorable John Adams Esqr., President of the American Academy of Arts and Sciences,

Sir, Desirous of contributing efficaciously to the advancemen* of a branch of science which has long employed my attention, and which apɼ ɩars to me to be of the highest importance to mankind; and wishing at the same time to leave a lasting testimony of my respect for the American Academy of Arts and Sciences; I take the liberty to request that the Academy would do me the honor to accept of five thousand dollars three per cent. stock in the funds of the United States of North America, which stock I have actually purchased, and which I beg leave to transfer to the Fellows of the Academy, to the end that the interest of the same may be by them and by their successors received from time to time forever, and the amount of the same applied and given once every second year as a premium to the author of the most important discovery or useful improvement, which shall be made and published by printing, or in any way made known to the public, in any part of the Continent of America, or in any of the American Islands, during the preceding two years, on heat or on light; the preference always being given to such discoveries as shall, in the opinion of the Academy, tend most to promote the good of mankind.

With regard to the formalities to be observed by the Academy in their decisions upon the comparative merits of those discoveries, which, in the opinion of the Academy, may entitle their authors to be considered as competitors for this biennial premium, the Academy will be pleased to adopt such regulations as they in their wisdom may judge to be proper and necessary. But in regard to the form in which this premium is conferred, I take the liberty to request that it may always be given in two medals, struck in the same die, the one of gold, and the other of silver, and of such dimensions that both of them together may be just equal in intrinsic value to the amount of the interest of the aforesaid five thousand dollars stock during two years, that is to say, that they may together be of the value of three hundred dollars.

The Academy will be pleased to order such device or inscription to be engraved on the die they shall cause to be prepared for striking these medals as they may judge proper.

If during any term of two years, reckoning from the last adjudication, or from the last period for the adjudication of this premium by the Academy, no new discovery or improvement should be made in any part of America, relative to either of the subjects in question, (heat or light,) which in the opinion of the Academy, shall be of sufficient importance to deserve this premium, in that case it is my desire that the premium may not be given, but that the value of it may be reserved, and, being laid out in the purchase of additional stock in the American funds, may be employed to augment the capital of this premium;

American Academy of Arts and Sciences v. Harvard College.

directions or instructions were ever given to the plaintiffs by the donor respecting the donation or the income thereof; and that they accepted the donation, to be holden, used and applied in the manner and for the purposes in this letter expressed, and had from time to time as the same became payable and until the present time received the income of the donation.

The bill further alleged that Count Rumford executed his last will in France in 1812, and thereby gave sundry legacies and bequests to divers persons, and among others to the President and Fellows of Harvard College, and gave and bequeathed the whole residue of his property and estate to his executors, to be by them transferred and paid over, for certain purposes in his will expressed, to the President and Fellows of Harvard College, whom he made and appointed his residuary legatees; and afterwards died, without having revoked his will, and it was duly proved and registered in Paris.

The plaintiffs then alleged that they had been ever since the receipt of said donation and still were desirous to comply with and perform all the directions of the donor's letter; and had for that purpose carefully examined all discoveries and improvements on the subjects of light and heat, made or pretended to be made and published in any part of the American Continent or Islands, which had come to their knowledge since the receipt of this donation and until the present time, that they might award the said premiums to the author or authors of such of the said discoveries or improvements as should appear to the

---

and that the interest of the sums, by which the capital may from time to time be so augmented, may regularly be given in money, with the two medals, and as an addition to the original premium, at each succeeding adjudication of it; and it is further my particular request that those additions to the value of the premium, arising from the occasional non-adjudications, may be suffered to increase without limitation.

With the highest respect for the American Academy of Arts and Sciences, and the most earnest wishes for their success in their labors for the good of mankind, I have the honor to be, with much esteem and regard,

Sir, Your most obedient humble servant,

Rumford.

London, July 12th 1796.

plaintiffs to deserve the same; but that there had not come to their knowledge any discovery or improvement respecting either light or heat, made and published or in any way made known to the public in any part of the Continent of America or in any of the American Islands, which had within two years after the same was so made or made public seemed to the plaintiffs of sufficient importance to deserve said premiums or either of them; and the plaintiffs had from time to time, as the same became payable, received the income of the donation, and added the same to the principal, without awarding any premium therefrom, until the fund had now become of the amount of twenty thousand dollars by such accumulation, and the present income thereof for two years amounted to about the sum of two thousand dollars.

The plaintiffs then represented to the court that the directions expressed in the letter of the donor could not be beneficially, nor with a due regard to the general objects for which the donation was made, be strictly and literally complied with and performed, " because discoveries or improvements respecting light or heat, of sufficient importance to deserve said premiums, are not and cannot be expected to be made as often as once in two years, and because it is not often practicable, within the space of two years after such discoveries or improvements are first made public, to determine whether they are of sufficient importance to deserve said premiums or not; and because, by the necessary accumulation of said fund by non-adjudication of said premiums, the amount of the income thereof to be awarded becomes too large for the proper reward of scientific researches, which should consist rather in the honor than in the pecuniary value of the premium." The plaintiffs also represented that the direction to invest the accumulations of the fund in the stocks of the United States had by the diminution of the amount of said stocks become inconvenient, and might soon become impossible to be performed.

The bill then proceeded as follows: " Inasmuch therefore as the main intent of the said donor, to wit, the promotion of the good of mankind by scientific discoveries and improve-

ments, cannot be effected by a literal and strict compliance with the terms of his donation, but the same would tend either to the great accumulation of a useless fund, or the improvident and extravagant reward of discoveries of doubtful merit. To the end therefore that the will of the said donor may be executed as nearly as the same can now be done, and because such matters are properly cognizable in a court of equity, your orators humbly pray that by a decree of this honorable court the terms of the said donation may be so far modified, that your orators be authorized and empowered to appropriate and dispose of the income of said fund, and the accumulation thereof, in manner following, to wit: That your orators may, at any annual meeting of said academy, award the Rumford Premium, consisting of a gold and silver medal of the value of three hundred dollars, adding thereto, if they see fit, any sum of money, not exceeding that amount, to any person in the American Continent or Islands who in their opinion shall have merited that premium by any important discovery or useful improvement relating to light or heat; and that the residue of the income which shall hereafter be received from the said Rumford Fund shall be appropriated to purchasing such books, papers and philosophical apparatus, or making such publications, or procuring such lectures, experiments or investigations, as shall in the opinion of your orators best facilitate and encourage the making of such discoveries and improvements as may merit that premium; such books and apparatus to be used, and lectures, experiments and investigations to be delivered and made, in the academy or elsewhere, as your orators shall think best adapted to the purpose aforesaid; and that the said Rumford Fund or any part of it may be invested either in notes of the Commonwealth of Massachusetts or of the city of Boston, or in stock of the Bank of the United States or of any bank in this commonwealth, or in the Massachusetts Hospital Life Insurance Company, or in notes or bonds secured by pledge of any of said stocks or by mortgage, if such appropriation and disposition of the said fund shall to the wisdom of this honorable court seem adapted to promote the main objects of the liberal and benevolent founder of the said fund, and in

compliance with his said directions as nearly as circumstances now permit." The bill ended with a prayer for process.

The defendants filed an answer, admitting the allegations of the bill, and alleging that the bequest made to the defendants by Count Rumford in his will was " for the purpose of founding in the said college or university a new institution and professorship, in order to teach by regular courses of academical and public lectures, accompanied with proper experiments, the utility of the physical and mathematical sciences for the improvement of the useful arts and for the extension of the industry, prosperity, happiness and wellbeing of society;" that he gave them the residue of his estate " as an addition to the said legacy given to them in and by his said last will and for the said purposes therein mentioned and declared; " and that they had, with the assent of the overseers of the university, established such a professorship therein, called the Rumford Professorship, and proposed to maintain it as long as they should be enabled, by means of these bequests or otherwise, so to do.

"And these defendants further say, that inasmuch as the said objects and purposes for which the said Benjamin Count Rumford founded the above mentioned professorship do include the objects specified in his said donation made to the plaintiffs; and as it will always constitute an important part of the duty of the said Rumford Professor to give such instruction as may tend to promote important discoveries and useful improvements on heat and on light; and inasmuch as the said Benjamin Count Rumford has, in and by his said last will and the codicil thereto, expressed and manifested his wish and intention that all his estate not otherwise disposed of should be applied to the institution and maintenance of the said professorship, they do humbly insist that if the said fund and the accumulation thereof, or any part thereof, cannot be appropriated and applied in the hands of the said plaintiffs to the execution of the general intent of said donor in making his said donation to the said plaintiffs, the same, or so much thereof as cannot be so applied, ought to be decreed to be paid over to these defendants as residuary legatees of said Count Rumford, for the use of said Rumford

Professorship; and submitting all their right, title and interest in the premises to the judgment, order and direction of this honorable court, these defendants humbly pray that such decree may be made as will best promote the advancement of science and the useful arts, and the prosperity, happiness and wellbeing of society, according to the main design, intent and will of the liberal and benevolent founder of said fund."

The plaintiffs filed a general replication. The solicitors of both parties afterwards signed this agreement: " This case is agreed to be submitted to the court on bill and answer without argument; neither party intending any relinquishment of legal rights, and both being ready to argue the case if the court shall think the matter doubtful."

The case was argued on the 18th of May 1832.*

*F. Dexter*, for the plaintiffs. I. This is a bill in equity to establish a charity, exactly where it can be done, *aliter cy pres*.

1. Chancery has a general regulation of all charities. *Gower* v. *Mainwaring*, 2 Ves. Sen. 89. So by deed as well as by will. *Attorney General* v. *Black*, 11 Ves. 191. So this court has jurisdiction of this case by special statute, general jurisdiction. *St.* 1830, *c.* 90.

2. This is a charity, within the meaning of the rules of chancery. *Whorwood* v. *University College*, 1 Ves. Sen. 536. *Gort* v. *Attorney General*, 6 Dow, 136. To promote learning is a charity. *Attorney General* v. *Harrow School*, 2 Ves. Sen. 552. So to purchase pious books. *Attorney General* v. *Stepney*, 10 Ves. 27.

Here it is alleged that the charity cannot be carried into effect literally, and the object is to establish it *cy pres*. The impossibility is best shown by the report.† The difficulty is twofold:

---

* The arguments are taken from the note book of the chief justice.

† Report made to the Academy on the 21st of December 1829, by Nathaniel Bowditch, Josiah Quincy and Francis C. Gray, a committee "to consider the subject of the Rumford Premium," on file in the case, of which the following are the material parts :

" This donation was accepted by the Academy on the terms in which it was offered. But the premium has never been awarded, none of the discoveries or improvements, for which it has been claimed, being deemed by the Academy of

1, The amount of the prize; and 2, That discoveries of impor•
tance cannot be tested within the term of two years. It is con-

sufficient importance to deserve it. By constant accumulation, the fund has now
increased to the sum of nearly $20,000. The history of science in other coun-
tries unites with our own experience to convince us that Count Rumford's plan,
contemplating the assignment of a biennial premium for important discoveries
of useful improvements on light and heat first made public within two years pre-
ceding, and interrupted only by ' occasional non-adjudications,' is absolutely im-
practicable. Such discoveries and improvements are not often made, and many
of those which are made require more than two years to test their merit. It is
perfectly manifest that the non-adjudication must be the regular and usual
course, and that the assignments of the premium must be occasional and even
rare. The very increase of the fund constantly increases the difficulty of be-
stowing the premium; for the Academy are expressly directed to award it only
to improvements or discoveries of sufficient importance in their opinion to de-
serve it, and an invention may merit a premium of 300 dollars, which is alto-
gether unworthy of one of 2000. A strict compliance with the incidental request
that the fund should increase indefinitely may therefore prevent the assign-
ment of any premium at all, and thus entirely defeat the great object of the
foundation, and render it totally useless. To permit such a result is not a faith-
ful fulfilment of the intentions of the donor.

" If it be found by long experience that a rigid adherence to particular limita-
tions, not essential to the main object of the institution, tends to defeat that
object, it must be presumed that the founder would wish those limitations modi-
fied, and it is the bounden duty of the Academy and of all who have an interest
in his property to endeavor to have them so modified as to promote the attain-
ment of the end which he proposed.

" There is another view of the subject which leads to a similar conclusion.
The principal design of Count Rumford was to encourage and reward, by an
honorable distinction, important discoveries and useful improvements, in relation
to light and heat, made in America, and he appoints the premium to be given in
two medals, one of gold and one of silver, as an addition to which is to be given
the income of such funds as may arise from occasional non-adjudications. The
whole income of the fund for two years is about two thousand dollars. He could
hardly have contemplated that the accessory should so far surpass the principal.
Considered with reference to its object, this sum is not only more than sufficient,
but is altogether extravagant, and is constantly becoming more so. It must lose
the character of a prize, and be sought with mercenary views, rather than as an
honorable distinction."

The committee reported a " plan for facilitating the awarding of the premium
and applying the surplus income," as the best they could " devise to execute in
practice the intent and promote the general object of the donor," being substan•
tially the scheme afterwards adopted by the court in the final decree.

ceded that the directions of the donor are precise and explicit and cannot be carried into effect.

3. But the general intent of the donor is manifest to benefit mankind, by stimulating ingenuity, on the two subjects of light and heat.

4. As to the claim of the college, it is worthy of observation that they claim as residuaries under the will of Count Rumford, whereas the plaintiffs claim under a grant made by a prior distinct instrument made in his lifetime. The defendants surely have no greater claim than heirs at law. Courts will establish a charity even against the heir at law, when the general trust can be reached.

5. But it is manifest that the donor expressed a particular respect for the American Academy of Arts and Sciences. Even an illegal charity will not be defeated for the benefit of the heir at law; but the court will carry it into effect. *Attorney General* v. *Guise,* 2 Vern. 266. *Attorney General* v. *Baxter,* 1 Vern. 248. *Attorney General* v. *Bowyer,* 3 Ves. 714. *Bishop of Hereford* v. *Adams,* 7 Ves. 324. There is no case where the heir at law is allowed to claim, where the general intent can be executed, either exactly or *cy pres.*

II. Supposing the college cannot oppose, then the question is, must this bill be dismissed, or has this court power to direct an execution *cy pres. Attorney General* v. *Boultbee,* 2 Ves. Jr. 387. Where a charity can be executed in substance, though not in mode, the court will order it. *Attorney General* v. *Whitchurch,* 3 Ves. 144. *Attorney General* v. *Wansay,* 15 Ves. 231. *Attorney General* v. *Mayor of Bristol,* 2 Jac. & Walk. 319. The court may increase the objects, where there is increased revenue. The secondary objects here cannot be attained without defeating the general intent.

The college have no equity. As residuaries, they stand upon the footing of heirs at law; as trustees, surely they can claim no preference over the academy.

*C. G. Loring,* for the defendants. This is not to be considered as a controversy; the defendants have nothing to ask but that their duties be faithfully executed, and the rules of law car-

ried into effect. The defendants do not deny that a donation for scientific objects is a charity, nor that the purpose of Count Rumford cannot be carried into effect, nor that the court has authority to direct a charity to be executed *cy pres*. But they do insist that the college has a right to the property, on the ground that the gift was in effect conditional; and if it could not be applied as he intended, it would be defeated, and go to the college as residuaries.

. It is not true that Harvard College has no equity. The purpose of the donation to the academy was precise and specific. There was no discretion allowed. The clause that if the premium is not given, the income shall be added to the principal indefinitely, shows that the donor had no intent that it should go to other objects. The purposes of the gift to the college are more general, but embrace the general investigations in regard to light and heat.

Courts of equity will never change the object, but only the mode. Jeremy on Eq. 245. *Ommanney* v. *Butcher*, Turn. & Russ. 270. Where the devise is void as against the statute of mortmain, the estate goes to the heir or residuary devisee. *Attorney General* v. *Goulding*, 2 Bro. C. C. 428. The question is what is consistent and what inconsistent with the purposes and objects of the testator.

The defendants suggest this scheme; that a portion of this fund, say $5000, be reserved to execute the specific purpose of the donor, and the remainder be paid over to the college, and so from time to time, as there may be accumulations, and that a trust be created for the purpose of carrying this into effect.

*Dexter*, in reply. There is a question whether, in case of a non-execution of the trust, the property would revert to the donor, or his heirs or residuaries.

The academy is the proper body to execute this trust. The scheme proposed is in exact pursuance of the general purpose and intent of the testator.

The case of *Attorney General* v. *Goulding*, 2 Bro. C. C. 428, depends wholly upon the statute of mortmain.

The opinion was delivered on the 30th of July.*

Shaw, C. J. Jurisdiction in this case is given by a special act, *St.* 1830, *c.* 90, authorizing the court to hear and determine in equity all matters relating to the donation of Benjamin Count Rumford to the American Academy of Arts and Sciences, and to make all proper orders and decrees touching the same. Conformably to the construction which has been put upon other statutes giving equity jurisdiction to this court in regard to particular subjects, this act confers an authority upon the court, which, though limited as to the particular subject upon which it is to act, is unlimited and entire, conformably to the established law and practice of courts of equity, respecting the complete disposition of such subject, with its incidents and consequences. As the pleadings in this case and the relief sought relate entirely to the donation in question, the case is manifestly within the jurisdiction of the court, to the same extent as if it were a court of general chancery jurisdiction.

This case stands clear of many of the difficulties which have presented themselves in other cases of charities.

In the case of *Baptist Association* v. *Hart's Executors*, 4 Wheat. 1, the bequest failed, because, not being made to a person or incorporated body capable of taking, and no *cestui que trusts* specifically designated, who might claim the appointment of a trustee, it could not be supported as a trust, and because the statute of 43 Eliz. had been repealed in Virginia where the question arose, before the bequest was made, it could not be protected by force of that statute as a charity. Here there is no question that the statute of Eliz. is in force; though in the form in which the case presents itself, it is not necessary to resort to it.

The case shows, that the gift in question by Count Rumford was a gift of personal property, made by Count Rumford in his lifetime, and made to the American Academy, who were then and ever since have been a corporation, not only capable of

---

* The opinion is printed from the manuscript in the chief justice's own handwriting, indorsed by him, " American Academy, in equity, *v.* Harvard College — Opinion."

taking, holding and managing property, but incorporated for the precise purpose of administering the species of charity contemplated by this donation, that of advancing the public welfare, by the promotion of scientific discoveries and improvements.

I. That a gift designed to promote the public good, by the encouragement of learning, science and the useful arts, without any particular reference to the poor, is regarded as a charity, is settled by a series of judicial decisions, and regarded as the settled practice of a court of equity. Such is a bequest for the improvement of a city, *Howse* v. *Chapman*, 4 Ves. 542; to improve a city and support public buildings, bridges, &c., *Gort* v. *Attorney General*, in the House of Lords, 6 Dow, 136; to establish new scholarships in a college, *Attorney General* v. *Andrew*, 3 Ves. 633; to found and endow a college, *Attorney General* v. *Bowyer*, 3 Ves. 714. What is a charity is principally regulated by the *St.* of 43 Eliz. *c.* 4. *Morice* v. *Bishop of Durham*, 9 Ves. 405.

1. As to the claim of the college in the present case, it is a question of great doubt in my mind, whether, even if the plaintiffs had renounced or rejected Count Rumford's donation, or perverted or misapplied it, the defendants as residuary legatees could claim it. Had this been a bequest to the plaintiffs by will, and the same will had constituted the defendants residuary legatees, there might have been some plausible ground to contend, that if the gift was not received and applied upon the terms of the will, the gift was ineffectual and void, and so would fall into the residuum; but here the gift was by another and different act in the lifetime of the testator, by which the property had become vested in the plaintiffs.

The only plausible ground upon which the college can claim is, that being residuary legatees, they too are trustees for scientific objects, and that such objects embrace the same subject matter with those confided to the academy, with some others, and therefore that the general purpose of Count Rumford, in his donation to the academy, would be promoted, if the property were confided in whole or in part to them. But we think this argument cannot be admitted. The college claim as residuary

legatees on the ground that the gift to the academy was upon condition, and the condition not complied with, or defeasible upon the condition of not complying with its provisions, and now forfeited by such non-compliance, and so passing to them as a part of Count Rumford's property not otherwise disposed of. But it is to be considered that the circumstance that the purposes to be effected by the gift to the academy and the bequest to the college being similar is purely accidental; that the principle upon which the college claim would equally avail them, although the purpose of Count Rumford in his donation to the academy should be wholly disappointed, and would equally avail an heir, claiming for his own use, had there been no will. Such accidental coincidence therefore in the trusts to the gift to the academy and the residuary bequest to the college adds nothing to the equitable claim of the college. But there is nothing in the case to show that the academy has as yet done any act, either renouncing or forfeiting the donation made to them by Count Rumford in his lifetime; and whatever might be the argument, had any actual misappropriation of the property taken place, it cannot now apply.

2. But regarding this donation as a charity, there are two grounds, upon either of which the college would be debarred from claiming the property.

1st. The academy, having once expressly accepted this donation upon the trusts and for the purposes for which it was given, are not at liberty to renounce it, but are compellable to hold and apply it to the public and charitable purposes to which it was destined.

2d. But, even if the academy had not thus accepted this donation, instead of reverting to the donor's heirs or residuary legatees, it would be applied to the general purposes of the charity under other suitable persons to be appointed for that purpose. *Attorney General* v. *Andrew*, 3 Ves. 633. *Andrew* v. *Merchant Tailors' Co.* 7 Ves. 223. *Andrew* v. *Trinity Hall*, 9 Ves. 525. Wherever it appears that a general object of charity is intended, and the purpose is not unlawful and void, the right of the heir at law is divested. It is impossible to look at the paper ac-

companying the donation of Count Rumford to the American Academy, without perceiving that a general purpose of promoting the public good, which by law is deemed a charity, was intended. In any possible aspect in which the claim of the college can be placed, it appears to the court impossible to perceive any tenable ground upon which their right to the whole or any part of the funds can be maintained, and that their claim therefore must be dismissed.

II. But the question then remains, whether the court can and ought to grant the relief prayed for by the plaintiffs in their bill, by enabling them to apply the trust property according to the general intent and purpose of the donor, but at the same time to vary in some degree from the precise mode by him pointed out for the attainment of that general purpose, upon the ground that the particular mode is impracticable. And we have no doubt that the court has authority to grant, and they are entitled to have, the relief prayed for.

It is now a settled rule in equity that a liberal construction is to be given to charitable donations, with a view to promote and accomplish the general charitable intent of the donor, and that such intent ought to be observed, and when this cannot be strictly and literally done, this court will cause it to be fulfilled, as nearly in conformity with the intent of the donor as practicable. Where the property thus given is given to trustees capable of taking, but the property cannot be applied precisely in the mode directed, the court of chancery interferes and regulates the disposition of such property under its general jurisdiction on the subject of trusts, and not as administering a branch of the prerogative of the king as *parens patriæ.* The distinction is clearly pointed out in a recent case, and expressed thus: " The law upon cases of this sort is now reduced to clear and distinct principles. Where there is a general indefinite charitable purpose not fixing itself upon any particular object, the disposition is in the king by the sign manual," as *parens patriæ;* " but where the gift is to trustees, with general or some objects pointed out, the court will take upon itself the execution of the trust." *Ommanney* v. *Butcher*, Turn. & Russ. 270.

Among a great variety of cases, where this salutary power will be interposed, is that where a general charitable intent is manifested, but where from some cause it cannot be precisely carried into effect: as where the trustees will not accept; *Attorney General* v. *Andrew*, 3 Ves. 633 ; *Andrew* v. *Merchant Tailors' Co.* 7 Ves. 223 ; where a vicar was presented without a required recommendation ; *Attorney General* v. *Boultbee*, 2 Ves. Jr. 380 ; 3 Ves. 220 ; where the objects of the charity are not sufficient to absorb the whole fund ; *Attorney General* v. *Wansay*, 15 Ves. 231. Where all the objects have been satisfied, if there be any surplus, the court will apply it to objects of a like kind, as nearly following the intent of the donor as practicable. *Attorney General* v. *Coopers' Co.* 19 Ves. 189. *Attorney General* v. *Wansay*, 15 Ves. 231. *Attorney General* v. *Mayor of Bristol*, 2 Jac. & Walk. 294. In such case the court will endeavor to follow out the apparent general design of the donor, by extending the benefit to others standing in the same relation or circumstances : as to another distinct college who will assume to perform the duties ; *Attorney General* v. *Andrew, ub. sup.;* to others of the same denomination of Christians, where the intent was to benefit his own sect; *Attorney General* v. *Wansay, ub. sup.;* to daughters as well as sons, where sons only are named, *ib.* What is the nearest method of carrying into effect the general intent of the donor must of course depend upon the subject matter, the expressed intent, and the other circumstances of each particular case, upon all which the court is to exercise its discretion.

We think there is no difficulty in discovering from Count Rumford's communication what his general and primary intention was. This intent is expressed in the first sentence.

" Desirous of contributing efficaciously to the advancement of a branch of science which had long employed his own attention, and which appeared to him to be of the highest importance to mankind, and wishing to leave a lasting testimony of his respect for the American Academy," &c. he then proceeds to direct that the income of the fund shall be given once in every second year as a premium to the author of the most important discovery or useful improvement which shall have been made

and published in America or the American Islands within two years preceding, on heat or on light, the preference being given to such discoveries as shall in the opinion of the academy tend most to promote the good of mankind.   He then proceeds to give directions as to the formalities to be observed.   He afterwards provides, that if during any term of two years no new discovery or improvement shall be made in any part of America, relative to either of the subjects of light or heat, which in the opinion of the Academy shall be of sufficient importance to deserve the premium, in that case the value is to be reserved and laid out in the purchase of additional stock to augment the capital ; the interest arising from its occasional non-adjudication to be added to the biennial premium.

It appears manifest that the leading and primary intent of Count Rumford was to stimulate the ingenuity, and aid and encourage the experiments and researches of individuals, on the Continent or the Islands of America, to make discoveries and improvements in those two great branches of physical science, to which he had devoted his own labors, and cause them to be made public for the good of mankind.   The object of dis tributing a premium biennially was indicated as an efficacious mode at once of animating the ambition of individuals, by an appeal to the love of distinction, and of giving notoriety to the valuable results of such exertion, yet it was but a mode of accomplishing the great object in view.

It appears satisfactorily to the court that this object in the mode particularly prescribed by Count Rumford cannot be attained.   These grounds are sufficiently set forth in the docu ments accompanying the pleadings in this case.   The fund has now accumulated to such an amount, that it seems manifest that there is no reasonable probability that any such improvement or discovery on the subject of light or heat is likely to be made, as in the opinion of the academy would be of sufficient importance to deserve a premium equal to two years' income of this fund.   But we are clearly of opinion, that there are various objects coming within the scope of the general intent and design of Count Rumford's donation, which is the encouragement and

promotion of discoveries and improvements, upon either of the subjects of heat or light, on the Continent of America, or in the American Islands, and that the plaintiffs are entitled to the decree of the court, giving directions that the income of the fund in question shall be applied to the promotion of this general intent, regarding the directions of Count Rumford as to the mode of such appropriation, as nearly as it can be conveniently done, consistently with the efficacious promotion of the general design.

Let the cause be referred to a master to report a scheme for the accomplishment of this purpose, to be laid before the court for its consideration, and all further directions are reserved.

The master made his report on the 4th of August, and the following decree was afterwards entered : *

" The cause coming to be heard upon the bill and answer by agreement of the parties, the substance of the plaintiffs' bill appeared to be that Benjamin Count Rumford in his lifetime made a donation to the plaintiffs of five thousand dollars in the three per cent. stocks of the United States, as a testimony of his respect for the American Academy of Arts and Sciences, and for the purpose of promoting by premiums, to be adjudged biennially by them, the making of such discoveries relating to light and heat as should in the opinion of the plaintiffs tend most to promote the good of mankind, and which should be made and published in the American Continent or Islands within the two years next preceding the awarding of such premium, and directing the surplus income and accumulation of said fund to be invested in the stock of the United States, and the income thereof added to the said premiums. But it is alleged that the mode of awarding said premiums pointed out by the donor cannot usefully nor without defeating the general intent of the donor be strictly complied with, and that in conse-

---

* The master's report is not on file. In the original decree, the words in brackets are stricken out, and those in italics inserted, by the hand of the chief justice

quence thereof no premiums have been yet awarded, but the said fund has by the addition of the income thereof accumulated to the sum of nearly twenty thousand dollars, and the income thereof for two years has become too large for a proper premium for such discovery, and that the same cannot longer be conveniently invested in the stocks of the United States. Therefore that the plaintiffs may be authorized to dispose of the surplus income of said funds in other modes adapted to promote the general intent of the donor, and to invest said fund in more convenient securities.

" Whereto the defendants by answer admit the material facts set forth in the bill, but allege that as residuary legatees of said Benjamin Count Rumford they are entitled to have paid over to them, for the use of the Rumford Professorship founded by said Count Rumford at said University, any portion of said fund, and of the accumulation and interest thereof, which cannot be applied in the hands of the plaintiffs to the execution of the general intent of said donor.

" *The cause having been argued by counsel, and fully considered, it appears to the court that the plaintiffs have not done any act, or neglected or omitted to do anything, whereby they have forfeited, waived or renounced the said donation, and that the President and Fellows of Harvard College have no right, as residuary legatees of Count Rumford, or otherwise, to claim the same or any part thereof. It further appears that the said donation was made to the American Academy for a general purpose of charity, that, namely, of promoting a useful branch of science for the benefit of mankind, that the Academy accepted the same, upon the terms stated and for the purposes contemplated by said donation, and are now under obligation to carry the general intent of the donor into effect, as far as it is practicable to do so. It further appears, that, in consequence of the impediments set forth in the bill, it is impracticable for the Academy to carry the general charitable intent of the donor into effect, in the exact and precise mode specified by him; but considering the general and primary intent of Count Rumford to have been to awaken and stimulate the ingenuity, and encourage the researches and experiments of*

*individuals, on the Continent or Islands of America, to make important discoveries or useful improvements upon the subjects of light or heat, and to cause them speedily to be published for the good of mankind, it does appear to the court, that it is quite practicable for the Academy to accomplish and carry into effect the general charitable intent and purpose of Count Rumford, by some slight alterations in the mode particularly prescribed by him for carrying the same into effect.*

" *It also appears to the court, that it would tend to promote the general charitable intent of the donor to allow the plaintiffs to invest the principal of the said fund in some safe and productive securities, other than the stocks of the United States.*

" Whereupon it was ordered by the court that the matter be referred to one of the masters in chancery, to report a scheme for carrying into effect the *general charitable intent and purpose of the donor, conformably to the* prayer of the plaintiffs' bill; and now John B. Davis, Esquire, one of the masters in chancery for the County of Suffolk, having reported a scheme in pursuance of said order, which, being heard and considered by the court, and [no objection being made thereto by the defendants] *the same appearing reasonable and conformable to the general intent of the donor,* is accepted, and it is therefore by the court ordered, adjudged and decreed, for the reasons set forth in the bill, that the plaintiffs be and they are by the authority of this court empowered to make from the income of said fund as it now exists, at any annual meeting of the Academy, instead of biennially as directed by the said Benjamin Count Rumford, award of a gold and silver medal, being together of the intrinsic value of three hundred dollars, as a premium to the author of any important discovery or useful improvement on heat or on light, which shall have been made and published by printing, or in any way made known to the public, in any part of the Continent of America, or any of the American Islands, preference being always given to such discoveries as shall in the opinion of the Academy tend most to promote the good of mankind and to add to such medals as a further reward and premium for

such discovery or improvement, if the plaintiffs see fit so to **do,** a sum of money not exceeding three hundred dollars.

" And it is further ordered, adjudged and decreed, that the plaintiffs *may* appropriate from time · to time, as the same can advantageously be done, the residue of the income of said fund hereafter to be received, and not so as aforesaid awarded in premiums, to the purchase of such books and papers and philosophical apparatus, (to be the property of said academy,) and in making such publications, or procuring such lectures, experiments or investigations, as shall in their opinion best facilitate and encourage the making of discoveries and improvements which may merit the premiums so as aforesaid to be by them awarded. And that the books, papers and apparatus so purchased shall be used, and such lectures, experiments and investigations be delivered and made, either in the said academy or elsewhere as the plaintiffs shall think best adapted to promote such discoveries and improvements as aforesaid, and either by the Rumford Professor of Harvard University, or by any other person or persons, as to the plaintiffs shall from time to time seem best.

" And it is further ordered, adjudged and decreed, that the said fund, or any part thereof, may be from time to time invested by the said plaintiffs either in notes, stocks or debts of the United States, or of the Commonwealth of Massachusetts, or of the City of Boston, or in stock of the Bank of the United States, or of any bank in this commonwealth, or in notes or bonds secured by pledge of any of said stocks, or by mortgage of real estate in this commonwealth, or may be deposited in trust and on interest with the Massachusetts Hospital Life Insurance Company."