## THE FIRST CONGREGATIONAL SOCIETY OF SOUTHINGTON *vs.* ATWATER AND ANOTHER.

A school society is a corporation, competent to take a bequest, or devise, in trust, for educational purposes, and it is no objection to such devise, or

bequest, that the trustees, who are to have the management of the fund, are required to be selected from certain ecclesiastical societies.

A testator bequeathed fifteen thousand dollars to the school society of the town of S, and directed that said society should use five thousand dollars in erecting a suitable building for an academical institution, and hold ten thousand dollars of the same as a permanent fund for the school or schools of said academical institution, and that the net income of said fund should be used for the benefit and encouragement of said institution, in paying teachers, and other necessary expenses; and that said society should annually appoint not exceeding five persons, to be the trustees of said academical institution, which trustees should be members of the Congregational and Baptist societies, in said town. At the time of making said will, and at the death of the testator, there were two such societies as were mentioned in said devise, which continued to the present time, (and no other of the same character as either of them was established in said town.) Held, that said trustees must be appointed from the two societies, which were in existence, when said devise took effect.

THIS was an information, in the nature of a *quo warranto*, in behalf of the state, at the relation of the first ecclesiastical society, against Orrin Atwater and Lorin Campbell, for usurping, using and exercising the office of trustees of the Lewis Academy.

The cause came to the superior court for the county of Hartford, at the term holden in January, 1854, and was reserved for the advice of this court, upon the following agreed statement of facts.

Addin Lewis, of New Haven, in the state of Connecticut, died on the 7th of April, 1842, leaving a will, legally executed, which, after his death, was duly established in the probate court of the district of New Haven, of which will the following portions are all that are important in the present case.

" *Eighth.* If my said daughter shall die without disposing, by her will, of the estate mentioned in the foregoing article, I do give, devise, and bequeath all said estate, (so not disposed of by her,) to her lineal descendants, who shall be living at the time of her death, in the same manner and proportion as the same would have descended and been distributed to them, if she had then owned the same as her own proper estate, and had died intestate and solvent; and if there

should be no lineal descendants of my said daughter living at the time of her death, I give, devise and bequeath ten thousand dollars of said estate to the school society of the town of Wolcott, in Connecticut, for the purposes herein after expressed, and fifteen thousand dollars of said estate to the school society of the town of Southington, in Connecticut, for the purposes herein after expressed.. *      *      *

"And as to said fifteen thousand dollars given, as aforesaid, to the school society of the town of Southington, I direct that said society shall use five thousand dollars of the same, in erecting, near the present center of said town, a building suitable for the accommodation of an academical institution, and the remaining ten thousand dollars said society shall hold, as a permanent fund for the school or schools of said academical institution, and the net income of said fund shall be used for the benefit and encouragement of said institution, in paying teachers and other necessary expenses; and said society shall annually appoint not exceeding five persons, to be the trustees of said academical institution, which trustees shall be members of the Congregational and Baptist societies in said town; and no religious preference whatever shall ever be given in the admission of pupils to the privileges of said institution, and all pupils from the town of Wolcott, not exceeding ten at any one time, who may wish to receive instruction in said institution, shall receive the same without any charge for tuition; but before said school society of the town of Southington shall have the right to demand any part of said fifteen thousand dollars for the purposes aforesaid, there shall be raised in said society a sum not less than two thousand dollars, to be added to said fifteen thousand dollars, as an addition to said permanent fund; and if said additional two thousand dollars shall not be raised, then said fifteen thousand dollars shall go to increase proportionally the devises and legacies given in the following articles of this will."

The daughter of the testator, mentioned in said will, died,

without disposing of the estate referred to, and without any lineal descendants, and the bequest, in said eighth section, to the school society of the town of Southington, took effect.

Said school society, in the year 1845, accepted said bequest, raised the two thousand dollars required by the terms of said will, the same being raised by taxation, in the usual form, and received from the executors of said Lewis, said fifteen thousand dollars, and soon after erected a large and commodious building, near the centre of the village of Southington, for the purposes of said academical institution, which is called the Lewis Academy. Said society expended upon said building the sum of five thousand dollars, retaining and still keeping the sum of ten thousand dollars, together with said two thousand dollars, raised by said society, as a permanent fund, for the support of said school.

At the time of the making of said will, and at the death of said Lewis, there existed, in said town of Southington, but one religious society of the Congregational order, which society was then known as the Southington Ecclesiastical society, and latterly as the First Congregational society of Southington. This society was the first, and originally the only religious society, established within the limits of said town. The society is still in existence, and contains a large number of members who are qualified to act as trustees of said institution.

There were, also, at the time of making said will, and at the time of the death of said Lewis, two other religious societies in said town, *viz.*, a Baptist society and an Episcopal society, both of which had places of worship, at the center of said village of Southington. Said Episcopal society, for more than ten years before the date of the will, had been in a languishing condition, was then nearly extinct, and has since been dissolved.

About the year 1846, a new religious society was organized in said town, and within the limits of said school society, and which is now in existence, and contains many members,

of suitable qualifications to have the care of said institu-
tion. Said society was organized under the name of the
Unitarian Congregational society, most of the members of
the same being Unitarian in their sentiments, but neither said
church nor said society having any vote or regulation, requir-
ing the members of either to adopt the Unitarian belief, the
creed of the church being that of the New Testament. Its
form of church government is Congregational.

Said school society has always, since the acceptance of
said bequest, until the present year, *viz.*, for about ten years,
elected, at its annual meeting, trustees of said institution,
from said first Congregational and said Baptist societies,
and no person has, during that period, been elected by said
society, to that office, who was not a member of one of said
societies, except that, on the 22nd of September, 1851, Jesse
Olney, of the Unitarian Congregational society, was elected,
who, having acted as said trustee, in sundry instances,
resigned his trusteeship, on the 29th of November, 1851, the
other trustees having previously resigned.

At the annual meeting of said society in the year 1853,
three persons were appointed by said society as said trustees,
*viz.*, Roswell A. Neale, and the defendants Orrin Atwater
and Lorin Campbell, of whom said Neale was, at said time,
and now is, a member of said Baptist society, and the other
two, *viz.*, said Atwater and Campbell, were not then, and
are not now, members, either of said first Congregational
society, or of said Baptist society, but said Campbell was
then, and now is, a member of said Unitarian Congrega-
tional society, and said Atwater was not then, and is not
now, a member of any religious society whatsoever, but both
said Campbell and Atwater were then, and are, members
and electors of said school society. No other trustees were,
at said meeting, or at any time since, appointed by said
society, and no person whatever was appointed, upon said
board of trustees, at said annual meeting, or at any time
since, who was, at said time, or is now, a member of said first
Congregational society.

Upon the foregoing facts, the respondents claim the right to hold said office of trustees of said academical institution.

The foregoing question, and all other questions of law arising on the above statement of facts, are reserved for the advice of the supreme court of errors.

*Hooker* and *von Deutsch*, for the plaintiffs, contended,

I. That it was the intent of the testator, that the trustees of the academy should be elected only from the Congregational and Baptist societies, of the town of Southington, and from those then existing.

II. There is nothing, in this intent, opposed to the policy of the law. Donors have a right to make any reasonable rules, with regard to the management of a charity. Girard will case, 2 Howard, 199. 14 Pick., 240. Our statute, with regard to charities, encourages and protects such foundations. Rev. Stat., p. 454, § 3.

III. There is nothing in this intent, beyond the powers of the school society to execute.

1. It falls within the direct purposes for which school societies were established. Rev. Stat., p. 297, § 11, and § 27.

2. If it does not fall strictly within the scope of the direct purposes of the school society, the trust can yet be executed by the society. 2 Howard, 127.

3. The limitations, upon the appointment of the trustees, can not be said to disfranchise members of the school society. A person can be disfranchised only where he has already a franchise. The members of the school society have no claim, as such, to eligibility.

IV. The school society, by accepting the bequest, has contracted to comply with all the directions of the testator.

V. The fact that the testator required the society to contribute, and that they have contributed $2,000, towards the fund, does not affect his right to direct as to the management of the fund, and their duty to follow his directions.

*Hungerford* and *T. C. Perkins*, for the defendants, contended,

1. That, by the provisions of the will of Mr. Lewis, trustees may be appointed from any Congregational society in Southington.

2. That eligibility of persons to act as trustees is not limited to the Congregational and Baptist societies, existing at the time the will was made, or the testator died.

3. That allowing that, by the terms of the will, the eligibility of persons to the office of trustees is limited to the members of the Congregational and Baptist societies in the town of Southington, the particular claim in the will imposing the restriction is void, not being in conformity with the law.

CHURCH, C. J. The question presented on the facts stated by the parties, and referred to us for advice under this writ of *quo warranto*, prosecuted upon the relation of the first Congregational society in Southington, against Orrin Atwater and Lorin Campbell, is, whether those respondents have a right to the office or place of trustees of the Lewis Academy, in said Southington, an academical institution, established and organized under the provisions of the last will and testament of Addin Lewis, Esq., deceased. We have given no attention to the form of the remedy adopted in this case, because the parties waive any objection to it, and consent that this question may be decided on this proceeding.

It will not be necessary, here, to repeat the facts agreed to: they are upon the record. Nor shall we notice all the points suggested, by course.

That corporations may be the beneficiaries and donees of bequests, or conveyances for charitable purposes, or be constituted trustees, to hold and control them for others, is now no longer a question. And that a school society, organized under our laws to carry out our system of free school education, is a most appropriate depository of a fund created for

educational purposes, will not be disputed. And if there be any case of a public charity, over which a court of equity should exercise a conservative jurisdiction, when necessary, it would seem it is presented here.

The provision or direction in the will, which accompanied the bequest to the school society, that the trustees should be selected from the Congregational and Baptist societies in the town of Southington, does not assume the form of a condition, the non-observance of which might work a forfeiture, upon the application of the testator's heirs; nor did the testator so intend it. Nor was it a mere request or suggestion, which the school society might disregard with impunity. It was a positive injunction or direction, intended to qualify the character of the bequest, and in the opinion of the donor, essential to the object he had in view.

With this direction accompanying it, the school society accepted it, and this operated as a contract, on its part; an engagement, that the direction should be complied with. A refusal now to do this, would operate as a fraud upon the testator's motives.

We can see, in all this, enough to justify and even to demand the exercise of the powers of the court, if it be true, as the relator claims, that the essential directions of the will, in regard to the qualifications of the officers or trustees, appointed under it, have been disregarded.

The corporation is a public one, established under our laws, to promote the important interests of education; its officers and agents partake of a public character; and so long as the school society shall retain the charity, the qualifications prescribed for these trustees, by the donor, are to be considered as essential as if the law had prescribed them, if found to be consistent with the law.

It is claimed by these defendants, that there are peculiarities in this case, which should forbid the court from interfering with the present acting trustees, chosen by the school society.

It is objected, that the effect of the direction in the will,
that the school society shall elect the trustees of the academy
from the members of the Congregational and Baptist socie-
ties in Southington, is to convert the school society into an
agency to promote denominational or sectarian views of re-
ligion, in opposition to the entire genius and spirit of our
constitution and laws.   If such was the object of the donor,
and such would be the probable result of this direction of
his will, we do not believe we ought to give it countenance.
For, although we recognize the right of every man to estab-
lish foundations and charities, to promote his own or any
other peculiar religious opinions, we should very much doubt
his right or his power to make use of our free school cor-
porations, as his instruments for such a purpose.   These
corporations are carefully organized, for the purposes of sec-
ular education, free and open to all persons, of all opinions,
and although all our laws, and especially our school laws,
are believed to be based upon the Christian religion, as the
foundation of their moral obligation, yet they impose · no
obligations, and are not intended even to create an influence
upon our free schools, or free school corporations, of a denom-
inational character or tendency.

But the views which we have taken of this will have not
led us to believe, that there is any conflict or inconsistency,
between the testator's directions, and the powers and duties
of the school society, or any of its members.

The will does not require that the trustees of the school
should be members of any church, or committed to any doc-
trinal opinions, nor does it require or suggest any denomina-
tional action, by these trustees ; it directs only that they shall
be members of the Congregational and Baptist societies in
the town of Southington.   Now, it is as well known, perhaps,
as any fact connected with our ecclesiastical organizations in
this state, that churches and societies are distinct bodies.
Churches regulate the admission of their own members into

their own bodies, and the law prescribes the admission of members of the several societies.

Members of churches are supposed to be committed to certain prescribed or acknowledged theological doctrines ; whereas, members of societies are not, and their opinions of doctrine are frequently dissonant and conflicting. Members of churches are often the minor portions of the society to which they belong. Furthermore, we infer that the donor of this fund did not intend to interfere at all with the doctrinal opinions of the pupils of the school he was founding, from the fact, that he directed that no religious preference whatever should ever be given to the admission of pupils to the privileges of the institution. He intended, by confining the trustees to those Congregational and Baptist societies, which then embraced the largest portion of the population of the town, to secure the supervision of men who, he supposed, would feel, and take, an active interest in the prosperity and success of the institution. He probably did not anticipate the future introduction of new societies, nor of new creeds, for which he could make no provision. He acted in reference to the condition of things as they then were.

It was also suggested in the argument, that this restrictive provision interfered with the electoral privileges of the members of the society, and in this respect, stood in opposition to the law.

But no right conferred upon the members of school societies, *by the law*, is restricted by the will. They have the same right of acting and voting, the same power of selecting all the officers of the society, which the law authorizes and directs them to appoint, as before. If they choose to interfere in the appointment of these new men, the trustees, under the will of Mr. Lewis, it is but reasonable, that they should conform to his wishes on this subject. The members of this society are no more restricted in their corporate franchises, by being confined in their choice of trustees, to the members of those Congregational and Baptist societies, than

they would have been, if the directions of the testator had limited the selection to persons within certain ages, or had suggested any other reasonable qualifications.

On the question, of what particular religious societies the trustees should be members, we think that, as there was, at the time of the making of the will, a Congregational and a Baptist society in Southington, which have continued in existence to the present time, and no other society of the character of either of them, has been established in that town, the trustees must be appointed from those two societies. What should be done with the fund, if those societies, or either of them, should become extinct, and there should be no other society there of the same character, or if another such society should be established there, it is not now necessary to determine.

As neither of the defendants was a member of either of those two societies, we are of opinion, that they are not entitled to exercise the powers and duties of trustees of the Lewis Academy, and the superior court is so advised.

In this opinion the other judges concurred.

　　　　　　　　　　　　　　　　　Judgment accordingly.