MORRIS W. SEYMOUR, TRUSTEE, *vs.* DAVID C. SAN-
FORD, JR., ET AL.

First Judicial District, Hartford, January Term, 1913.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A testatrix, *S*, gave $15,000 to her sister, *B*, absolutely, "but with the
hope and expectation that she will expend so much of the income
and principal thereof if it should become necessary, in the carrying
on of a certain charity in which she knows I am deeply interested."
About a year later the legatee died and left a will which referred
to the former bequest as one for the "carrying on of certain char-
ities," in which she stated that she, *B*, had always regarded the
bequest as a sacred trust "to be administered as *S* desired," and·
gave the same to the plaintiff "who was likewise acquainted with
the wishes of my sister . . . having full faith and confidence that
he will carry out her wishes. . . . Upon the accomplishment of
the purposes for which said fund was created," she gave the re-
mainder, if any, to the defendant church. By a letter to her sister,
written after the execution of the will, *S* declared that the purpose
of the bequest was that the income, and principal if needed, should
be used for the support of a former rector of the aforesaid church,
now deceased, and each testatrix had orally instructed the plaintiff
that any surplus income should be used for the education of a
certain grandnephew. *Held*:—
1. That the letter could not, under our decisions, be regarded as a part
   of the will of *S*, nor could it be used to create, or aid in creating, a
   precatory trust.
2. That the will of *S* did not create a precatory trust, but gave to *B* an
   absolute title to the fund, leaving its disposition entirely to her
   discretion and conscience.
3. That while it was clear that *B* intended the plaintiff should take
   the fund as a trustee only, her will had not described either the
   subject-matter or the beneficiary of the first trust; and that inas-
   much as these omissions could not be supplied by *B's* oral state-
   ments to the plaintiff, since this would offend the statute of wills,
   the alleged, or attempted, trust for the benefit of the rector and
   the grandnephew was ineffective, and the defendant church, as
   remainderman, was entitled to the balance of the fund in the plain-
   tiff's hands, such disposition being a valid gift in trust.
It is a legal impossibility to create a trust under a will, or to add to a
valid one therein created, by mere oral declarations.
In those jurisdictions where the doctrine of incorporation by refer-

ence prevails, two conditions, at least, must exist: (1) the paper must be in existence at the time of the execution of the will; (2) the reference in the will must describe the specific paper.

In this State a letter, whether written at the time of the execution or not, cannot operate as a declaration of trust, since this would, in effect, make a testamentary disposition of property by a writing not executed in conformity with our statute of wills. Such an instrument may be used to help interpret the doubtful language of a will, or to identify the beneficiaries or the property described in the will; but it cannot be used to show an intent not expressed in the will, nor to insert a devise or bequest not found therein.

Three things are required to convert expressions of desire or expectation in a will into a valid precatory trust: (1) a clear intent to make the expectation of the testator imperative upon the legatees; (2) certainty as to the subject-matter of the expectation; (3) certainty as to the object of his bounty.

Argued January 7th—decided March 11th, 1913.

Suit to determine the validity and construction of a clause in the will of Sarah Sanford Black of New Milford, deceased, brought to and reserved by the Superior Court in Litchfield County, *Burpee, J.*, upon the allegations of the complaint, for the advice of this court.

Miss Caroline S. Sanford, sister of Mrs. Black, provided in her will as follows: "I also give and devise to my beloved sister, Sarah S. Black, the sum of Fifteen Thousand Dollars ($15,000) in cash, or in such securities belonging to my estate as she may select, to be hers absolutely; but with the hope and expectation and perfect faith that she will expend so much of the income and principal thereof, if it should become necessary, in the carrying on of a certain charity in which she knows I am deeply interested."

Miss Sanford wrote Mrs. Black concerning the charity mentioned in said clause, the following letter: "My Dear Sarah:—In a will which I have recently executed, I have given you, among other things, a specific bequest of fifteen thousand dollars, with the request that you will expend the income and so much of the principal thereof as is necessary in the carrying on

of a certain charity that I am interested in. I had the matter put in that way so that nothing might appear upon record, but as a matter of fact, as you well know, my idea is that the income and some of the principal if necessary, should be used to take care of Mr. Crockett, and having the fullest faith in your willingness to carry out any desire of mine, I write this letter that there may be no misunderstanding as to what I mean by that clause in my will.

Affectionately, Caroline S. Sanford. Dated New York, January 24th, 1908."

Miss Sanford and Mrs. Black were largely instrumental in organizing and maintaining the defendant All Saints Memorial Church, and entertained for its former rector, the said Mr. Crockett, feelings of respect and friendship.

Mrs. Black survived Miss Sanford, and died August 13th, 1910, leaving a will, clause twenty-three of which is as follows: "Twenty-third: Whereas my beloved sister, Caroline Selima Sanford, by her last will and testament, gave to me the sum of Fifteen Thousand Dollars, in cash to be mine absolutely, but with the expressed hope and desire that I should use the principal and income therefrom in the carrying on of certain charities in which she was interested, and in reference to which she had from time to time expressed to me her desires, and which sum I have always considered a sacred trust to be administered by me as she desired, and some portion of which sum may remain at the date of my decease, I give, devise and bequeath said remainder to Morris W. Seymour, who was likewise acquainted with the wishes of my beloved sister in reference to the disposition of said sum, having full faith and confidence that he will carry out her wishes, and will in the case of his decease so provide that said sum if any remain, shall be devoted to said object. Upon

the accomplishment of the purposes for which said fund was created, I direct that said remainder, if any, shall be paid over to and become the property of said All Saints Memorial Church of New Milford, Connecticut."

At the date of each of said wills Mr. Crockett was younger than either of said testatrices, in fair health, and with an average expectancy of life, and each testatrix knew that his circumstances and conditions were such that he would probably be incapacitated for self-support.

Mrs. Black's only heirs were two nephews and a niece. The defendant David C. Sanford, Jr., is her grandnephew. She had no other grandnephews and no grandnieces.

Both Miss Sanford and Mrs. Black orally informed plaintiff, who was their cousin and intimate friend and counsel, and sole executor of Miss Sanford's will and one of the three executors of Mrs. Black's will, "that if the entire income of the said sum of $15,000 was not needed for the support of said former rector of said church, it was their wish that any surplus might be expended for the education of the defendant the said David C. Sanford, Jr."

Miss Sanford, during her lifetime, and Mrs. Black, after her sister's death and until her own death, from time to time made payments for the education of said David C. Sanford, Jr.

Mr. Crockett died September 6th, 1911.

The plaintiff trustee received said legacy, less the succession tax, being $14,418.75, together with $332.46 income therefrom.

The case is reserved for the advice of this court as to the several questions of law stated in the plaintiff's claims by way of equitable relief, viz: "1. Whether the said sum of $14,418.75 principal and $332.46 income, shall continue in his hands as trust funds during

the time that the defendant David C. Sanford, Jr., may pursue his education in such schools and universities as he may desire to attend. 2. To whom shall he pay the income thereof. 3. To whom and at what time shall he pay the principal thereof. 4. That this court make such decree that upon your petitioner paying out the principal and interest of said funds in accordance with the orders of this court he shall be thence discharged of all further liability in the premises. 5. That his costs and charges in this proceeding be paid from said fund. 6. That the sums to be allowed out of said trust fund to the several parties hereto for their expenses and counsel fees may be fixed by the court and paid out of said fund."

*Donald T. Warner* and *Frederic M. Williams,* for the plaintiff.

*John K. Beach,* for the defendant David C. Sanford, Jr.

*John F. Addis,* for the defendant All Saints Memorial Parish.

WHEELER, J.  The will of Miss Sanford bequeathed to her sister, Mrs. Black, $15,000 absolutely, "but with the hope and expectation and perfect faith that she will expend so much of the income and principal thereof, if it should become necessary, in the carrying on of a certain charity."

In a letter of Miss Sanford to her sister, written shortly after the execution of her will, the object of the charity is specified and its purpose so expressed as to make its meaning unmistakable, and the reason for not naming in her will the object of her bounty is stated.

One claimant to this fund, All Saints Memorial

Church, agrees that this clause of Miss Sanford's will, coupled with the letter, creates a lawful precatory trust, and we do not understand that the other claimant, the guardian of David C. Sanford, Jr., dissents from this view.

Under our decisions the letter cannot, for any purpose, be regarded as a part of the will of Miss Sanford; it cannot be used to create nor to aid in the creation of a precatory trust. In those jurisdictions where the doctrine of incorporation by reference prevails, two conditions at least, must exist: (1) that the paper was in existence at the time of execution of the will; (2) that the reference in the will must describe the specific paper. Neither of these conditions exists in this instance, and hence this doctrine, as applied to this case, would have no application even in those jurisdictions.

In this jurisdiction we hold that a letter, whether written at the time of the execution or not, cannot operate as a declaration of trust, since this would, in effect, make a testamentary disposition of property by an instrument not executed in conformity with our statute of wills. Such an instrument may be used to help interpret the doubtful language of a will, to identify a devisee or legatee, or the property described in the will; it cannot be used to show an intent not expressed in the will, nor to insert in the will a devise or bequest not there found. *Bryan* v. *Bigelow,* 77 Conn. 604, 614, 60 Atl. 266.

In this clause we find: the words of expectation follow an absolute bequest; the beneficiaries are not so named or described as to be capable of identification; there is nothing in the body of the will, nor in the context and surrounding circumstances, indicative of an intent to create a trust, and the language used is neither that creating a trust, nor that of command. Considerations of this nature not only make uncertain the intention to

create a trust, but they make the intention of the testatrix not to create a trust, very clear. The language of expectation of, and confidence in, the use the testatrix hoped Mrs. Black would make of this fund, expressed her reason for making the bequest, but did not change its absolute character. It imposed upon Mrs. Black no obligation; it left to her discretion the use of the fund for an unnamed charity. In effect it gave the fund to her in the confidence that she would use it for an unnamed charity.

Three requisites were needed to convert these words of expectation into a valid precatory trust: (1) A clear intent to make the expectation of the testatrix imperative upon Mrs. Black; *Hughes* v. *Fitzgerald*, 78 Conn. 4, 7, 60 Atl. 694; (2) the subject-matter of the testatrix's expectation certain; (3) the object of her bounty certain. *Bristol* v. *Austin*, 40 Conn. 438, 447; *Gilbert* v. *Chapin*, 19 Conn. 342, 347; 3 Pomeroy on Eq. Jurisp. (3d Ed.) § 1016, p. 1927. This clause discloses an "uncertainty indicative of the absence of an intention to create a trust," and it discloses "an uncertainty in the object to be benefited and the subject to be affected." It follows that no precatory trust was created by this clause of Miss Sanford's will; under it Mrs. Black took an absolute title to the fund.

Mrs. Black, in her will, says she regards this fund received from her sister as a sacred trust to be administered in accordance with her sister's desires as expressed to her for the purpose of carrying on certain charities. So regarding, she bequeathed that part of the fund remaining to the plaintiff, Mr. Seymour, "who was likewise acquainted with the wishes of my beloved sister in reference to the disposition of said sum," having full faith and confidence that he would carry out her sister's wishes, and in case of his decease providing that the fund, if any remain, be devoted to the object of the

trust.    Upon the accomplishment of the purposes of
the trust the testatrix directs that the remainder of the
fund be paid to All Saints Memorial Church.

It requires no argument to show that the bequest to
Mr. Seymour was not in any degree an absolute one,
but one wholly in trust, since the bequest to All Saints
Memorial Church was a valid gift in trust; he had no
control over the disposition of the fund, but must do
with it as the testatrix willed.   There is no uncertainty
in Mrs. Black's intent to make Mr. Seymour her
trustee.    But when we examine this clause of the will
we find the subject-matter of the first trust is not de-
scribed, nor is the beneficiary named or described.
There is, then, uncertainty in the subject-matter and
object of the intended trust.   Thus two of the prime
requisites of a precatory trust are absent.   It is said
that these omissions are supplied in the oral statements
made by both Miss Sanford and Mrs. Black to Mr.
Seymour.   The statute of wills is an unsurmountable
barrier to this attempt to add to this clause of the will
the purpose of the unnamed charity, and its benefi-
ciary.   This clause was ineffective to create a precatory
trust for the benefit of Mr. Crockett.   The agreed facts
recite that both Miss Sanford and Mrs. Black orally
informed Mr. Seymour that if the entire income of said
fund was not needed for the support of Mr. Crockett,
they desired that any surplus might be expended for
the education of their grandnephew, David C. San-
ford, Jr.   If no trust was created for Mr. Crockett, it is
difficult to see how a trust could be created for the
grandnephew.   If we assume that this clause did create
a trust for the benefit of Mr. Crockett, this is an attempt
to add to the beneficiary of the trust by oral declaration
of the testatrix.   It is a legal impossibility to create a
trust under a will, or to add to one in existence for the
benefit of an unnamed beneficiary, by mere oral dec-

larations.  *Dennis* v. *Holsapple*, 148 Ind. 297, 300, 47
N. E. 631.   The statute of wills is an all-sufficient
reason why such an attempt must fail; in this instance
there are other valid reasons.

The oral statement, at the most, expressed the wish
that the surplus of the income not needed for the sup-
port of Mr. Crockett should be expended for the
education of the grandnephew.   This referred to the
surplus arising in the lifetime of Mr. Crockett.   Since
he is now deceased, the contingency attempted to be
provided for has passed.   Miss Sanford never, so far
as the admitted facts disclose, expressed to Mrs. Black
her desire to have the purpose of the fund and the ob-
ject of its bounty added to, and Mrs. Black never knew
of her wish in this particular.   That Mrs. Black did
not in her own will carry out her wish as to her grand-
nephew, is not without significance.   She could not
give him any part of this fund until the decease of
Mr. Crockett, since it could not be known what part
of income and principal his care might require, nor could
it be known how long he would live, nor whether any
part of the fund would remain at his decease, nor
whether the grandnephew, at the decease of Mr. Crock-
ett, would not be beyond the age for education in the
schools.   It may be that Mrs. Black did not, at the
time she expressed to Mr. Seymour her wish regarding
her grandnephew, clearly have in mind that under the
trust, if his necessities required, the entire principal as
well as the entire income of the fund must be devoted
to the care of Mr. Crockett.   One purpose Mrs. Black
made transparent.   The "sacred trust" committed to
her keeping by her sister was never intended by her
to be subordinated to the education of her grand-
nephew; nor the fulfillment of that trust, perhaps in the
later years of Mr. Crockett's life, inadequately met by
the disposition of the surplus income of the earlier years

when the entire income was not needed for his care. We cannot assume that it was Mrs. Black's imperative wish that this fund should be used in violation of her attempted trust for Mr. Crockett. We do not know when Mrs. Black expressed this wish to Mr. Seymour. It may have preceded the will or been subsequent to its making.

That the will of Mrs. Black refers to charities and purposes is claimed to show her intent to include more than the single object, the care of Mr. Crockett. Miss Sanford provides for the carrying on of a certain charity; Mrs. Black for the carrying on of certain charities. We do not think this language is definitely persuasive that Mrs. Black referred to more than the single charity of her sister's trust. The clause itself refers indifferently to the charities and purposes of the fund, and to its object, now using the plural and then the singular. If the oral wish expressed to Mr. Seymour by Mrs. Black, that she desired the surplus income not needed for the support of Mr. Crockett to be expended for the education of her grandnephew, could be regarded, it does not make it clear that Mrs. Black intended that the precatory words of the twenty-third clause were used in an imperative sense.

Finally, the guardian insists that while the court cannot direct the plaintiff to expend the income for the education of the grandnephew, it can and should leave this to his conscience, where Mrs. Black committed it. Counsel for the guardian does not develop the legal theory upon which he rests his claim. We assume the theory must be that Mr. Seymour as to the grandnephew was a donee vested not with a power in trust, but with a mere power of discretion over the surplus which he could use for the education of the grandnephew, or withhold at his pleasure. Therefore the guardian's position is: at the same time, by the same instrument and in the

same manner Mr. Seymour becomes a trustee for Mr.
Crockett, he becomes a donee of the unexpended sur-
plus with the discretionary power of use for the benefit
of the grandnephew,—a power which he may not dele-
gate and which dies with him, though the trust may
live. These positions seem inconsistent. The second
would defeat a part of Mrs. Black's intention to give
Mr. Crockett the entire income and principal if neces-
sary. In reality this claim is nothing less than an at-
tempt to create or aid a claimed power under a will by
oral declarations made perhaps before and perhaps
after the execution of the will. This cannot be done
,without first repealing the statute of wills.

The Superior Court is advised that it enter its decree
that no part of the said principal sum and income can
be paid to, or for the benefit of, said grandnephew, the
defendant David C. Sanford, Jr.; that the plaintiff,
said Morris W. Seymour, trustee, pay over forthwith to
All Saints Memorial Church of New Milford, Con-
necticut, said principal and income, together with any
increase thereon less the costs, expenses and charges
of the said trustee as shall be allowed, and such reason-
able sums as shall be allowed to the several parties
hereto for their expenses and counsel fees, by the court
out of said trust fund.

No costs will be taxed in this court.

In this opinion the other judges concurred, except
HALL, C. J., who concurred in the result, but died
before the opinion was written.