MARY ALICE MITCHELL *vs.* WILLIAM H. REEVES ET ALS.

MALTBIE, C. J., HINMAN, AVERY, JENNINGS and CORNELL, Js.

Argued November 3d, 1937—decided January 5th, 1938.

*Cyril Coleman,* for the plaintiff, with whom, on the brief, was *Robert P. Anderson,* for the defendant Jesse B. Stinson, administrator.

*William H. Comley,* with whom was *William Reeves,* for the defendant executors.

*Wallace W. Brown,* with whom was *Charles Welles Gross,* for the defendant the Hartford National Bank and Trust Company, trustee.

*Richard F. Corkey,* Assistant Attorney General, for the defendant the Attorney General.

MALTBIE, C. J. Virginia Palmer, late of New London, in her last will gave the residue of her estate, amounting to approximately $2,000,000, to a trustee to be held by it without limitation as to time, the income, after the payment of taxes and the expenses of administration, to be distributed "semi-annually as near as may be, to corporations, organizations, societies, institutions and trusts located or operating in the City of New London, Connecticut, which are devoted exclusively to religious, charitable, scientific, literary, historical or educational purposes, including the encouragement of art, and which under the federal and state succession, transfer and inheritance estate tax laws at the time of my death or at the time they are assessed are exempt from taxation; and I direct that the selection of beneficiaries and the respective amounts payable to them for distribution be made in the discretion of the trustee, its successor or successors, of this trust." The questions stated in the reservation raise the issue of the validity of the trust, more specifically, whether or not it is sufficiently definite and certain and whether or not it is so restricted to charitable uses as to be valid.

If, under the will, the trustee can distribute the income only to corporations, organizations and trusts which are exclusively devoted to charitable purposes, the power of selection given to the trustee is sufficient to sustain the trust against the claim that it is too indefinite and uncertain. General Statutes, § 4825. Under the provisions of this statute a testator is not required to designate the particular charitable purpose for which the property is to be used. "The gift is valid if the testator gives the trustee power to select such purpose, and no gift accompanied by such power of selection is void for uncertainty." *Cheshire Bank & Trust Co.* v. *Doolittle,* 113 Conn. 231, 235, 155 Atl. 82;

*Shannon* v. *Eno,* 120 Conn. 77, 83, 179 Atl. 479; *Gossett* v. *Swinney,* 53 Fed. (2d) 772, 778. On the other hand, if under the general description of the organizations or trusts to which the income is directed to be distributed, the trustee may select as beneficiaries organizations or trusts not devoted exclusively to charitable purposes, the entire gift must be treated as void. *Adye* v. *Smith,* 44 Conn. 60, 68; *Coit* v. *Comstock,* 51 Conn. 352, 383; *Chamberlain* v. *Stearns,* 111 Mass. 267, 269; *Matter of Durbrow,* 245 N. Y. 469, 474, 157 N. E. 747; Restatement, Trusts, Vol. 2, p. 1207; Zollman, Charities, § 394.

At least ever since the Statute of Elizabeth (43 Elizabeth, Chap. 4), gifts for religious purposes have been regarded as charitable. *Mack's Appeal,* 71 Conn. 122, 135, 41 Atl. 242; *First Congregational Soc.* v. *Bridgeport,* 99 Conn. 22, 30, 121 Atl. 77; *Cheshire Bank & Trust Co.* v. *Doolittle,* supra, 232. This is also true of gifts for educational purposes. *Hoyt* v. *Bliss,* 93 Conn. 344, 350, 105 Atl. 699; *Lyme High School Asso.* v. *Alling, Attorney General,* 113 Conn. 200, 204, 154 Atl. 439. The word "charitable" as used in the will was evidently intended to refer to gifts for the relief of the needy; *Hamden* v. *Rice,* 24 Conn. 350, 355; see *Potter* v. *Bowers,* 89 Fed. (2d) 687; Montgomery, Federal Income Tax Handbook, p. 830; and such gifts are also for a charitable use. *Strong's Appeal,* 68 Conn. 527, 530, 37 Atl. 395.

Our own statute of charitable uses, General Statutes, § 5000, was first enacted in 1684. 3 Col. Records, 158. It is a substitute for the Statute of Elizabeth; *Adye* v. *Smith,* supra, 69; but it specifically includes the uses we have mentioned and certain others. The enumeration in it of these uses is not, however, intended to include all charitable uses to which it applies, for it contains a broad phrase covering gifts "for any other

public and charitable use." The scope of the statute is illustrated by our decision in *Shannon* v. *Eno, supra,* 82, where we sustained a gift made to afford care and protection to and alleviate the suffering of that class of animals which by domestication contribute to the comfort, pleasure and well being of man. The breadth of the uses which may be held properly to be charitable is seen in the well known definition of such uses in the opinion written by Gray, J., in *Jackson* v. *Phillips,* 96 Mass. (14 Allen) 539, 556: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." "The enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, the differing condition, character and wants of communities and nations, change and enlarge the scope of charity, and where new necessities are created new charitable uses must be established. The underlying principle is the same; its application is as varying as the wants of humanity." 5 R. C. L. 323; Restatement, Trusts, Vol. 2, p. 1141.

Upon this broad background of possible charitable uses we consider the will before us. The word "literary" as commonly used in such a connection as it occurs here is naturally to be associated with the word "society," rather than with the other organizations or

trusts referred to. It by no means necessarily signifies an organization which is in whole or in part devoted to the production of works of literature for commercial profit. It signifies rather an organization the purpose of which is to foster and encourage an interest in worth-while literature. An historical organization is one, as ordinarily understood, the purpose of which is to preserve historical records and mementos and to arouse an interest in history and the realization of its significance. The encouragement of art serves to awaken an appreciation of esthetic values; and trusts to establish museums of art and the like are recognized charitable uses. *McLyman* v. *Art Association of Newport,* 51 R. I. 273, 279, 154 Atl. 117; *Simmons* v. *Fidelity National Bank & Trust Co.,* 64 Fed. (2d) 602. All of these purposes are essentially educational. *Matter of Mergentine,* 129 App. Div. (N. Y.) 367, affirmed 195 N. Y. 572, 88 N. E. 1125; *Irwin* v. *Swinney,* 44 Fed. (2d) 172, 175. They form a part of " 'the process of developing and training the powers and capabilities of human beings;' " *Lyme High School Asso.* v. *Alling, Attorney General,* supra, 207; education "comprehends in its broadest significance the acquisition of all knowledge tending to develop and train the individual and when used in this sense is not[to be] limited to the years of adolescence or to instruction in the schools." *New Britain Trust Co.* v. *Stoddard,* 120 Conn. 123, 127, 179 Atl. 642.

An organization or trust devoted to scientific purposes may well serve to make available the results of scientific study and research which are capable of ministering to the well being of society, and are often of a nature which cannot be carried on with a view to any financial return upon the necessary expenditure. A fund devoted to such purposes falls well within the field of charitable uses. *Matter of Frasch,* 245 N. Y.

174, 156 N. E. 656; *Irwin* v. *Swinney,* supra. "That a gift designed to promote the public good, by the encouragement of learning, science and the useful arts, without any particular reference to the poor, is regarded as a charity, is settled by a series of judicial decisions, and regarded as a settled practice of a court of equity." Shaw, C. J., in *American Academy of Arts and Sciences* v. *Harvard College,* 78 Mass. (12 Gray) 582, 594. All these objects, when divorced from the profit motive and so conducted as to serve not the interests of a particular group who may comprise an organization but those of the public at large, are within the field of proper charitable uses.

That there are corporations, organizations and trusts within the general meaning of the language used in the will which could not be regarded as exclusively devoted to charitable uses may be true. So the question remains whether the trustee under this will could devote any part of the income of the fund to such corporations or organizations. That depends upon the meaning of the provision in the will before us. The question is of course not what did the testatrix mean to say but what did she mean by what she did say; *Swole* v. *Burnham,* 111 Conn. 120, 122, 149 Atl. 229; and we are confined to the intent which she has expressed in the words she has used. *Fairfield* v. *Lawson,* 50 Conn. 501, 510; *Stearns* v. *Stearns,* 103 Conn. 213, 223, 130 Atl. 112. However, in ascertaining the intent which is expressed in a certain provision, a will is to be read as a whole and if it discloses an underlying intent, that is to be considered in determining the meaning to be accorded to the particular language under consideration. *Pinney* v. *Newton,* 66 Conn. 141, 152, 33 Atl. 591; *Lepard* v. *Clapp,* 80 Conn. 29, 32, 66 Atl. 780; *Citizens & Manufacturers National Bank* v. *Guilbert,* 121 Conn. 520, 526, 186 Atl. 564.

The application of this principle of construction at times requires, in order to carry out the intent of the testator as disclosed in the will as a whole, that a narrower interpretation should be given to certain words than they import in their broad significance; and as applied to a trust for a charitable use the principle takes on an added force from the favor with which courts regard such trusts and from the rule that they are to be sustained if it is reasonably possible to do so, and that every reasonable intendment is to be made in order to uphold them and make them effective. *Coit* v. *Comstock*, supra, 377; *First Congregational Soc.* v. *Bridgeport*, supra, 30; *Hartford National B. & T. Co.* v. *Oak Bluffs Baptist Church*, 116 Conn. 347, 352, 164 Atl. 910.

The following cases are instances of the application of this principle. In *Weeks* v. *Mansfield*, 84 Conn. 544, 80 Atl. 784, a gift to the Connecticut Hospital for the Insane, the income to be expended for the support of indigent insane persons, with a preference of such as belonged in the town of the testator's residence, was restricted, except in certain circumstances, to the support of such insane at the Connecticut Hospital. In *Eccles* v. *Rhode Island Hospital Trust Co.*, 90 Conn. 592, 98 Atl. 129, we sustained a gift to "The Rock Nook Home for Children, Incorporated," though the Home was not incorporated, and to the objection that it could not be known what its purposes were, we answered that its present purposes accorded with the terms of the will, and added (p. 600) that "the necessary presumption of law is that according to the true intent and meaning of the testator these [gifts] were to be used for that object and no other." In *Brinsmade* v. *Beach*, 98 Conn. 322, 119 Atl. 233, the testatrix made a gift to a certain organization for a specific charitable purpose, and we held that a gift of

a part of the residue to the same organization without restriction was intended to be used for the charitable purposes previously specified; and a similar rule of construction was also applied in *Eccles* v. *Rhode Island Hospital Trust Co.*, supra, 599.

In the first part of her will the testatrix made several gifts to or for the benefit of individuals. The second part, definitely separated from the first, begins with a statement of the testatrix that, her sister being deceased, the duty and privilege devolves upon the testatrix of carrying out the plans which they had agreed upon for the use of the property received by them from their parents and always regarded by them as a joint possession; "and it is in fulfillment of my sister's and my wish to use our property in a manner that will be a continuing benefit and enrichment to the community where we have lived and a memorial to our parents that the public gifts provided in this will are made." Then follow gifts in trust for the benefit of two Episcopal churches, gifts to a school, a college, and a hospital for the erection and maintenance of buildings and to a museum to build a wing or annex in which to house a collection of paintings made by the testatrix's brother. A reading of the preamble and of the terms of these gifts makes it clear that the mind of the testatrix was fixed predominantly upon such a distribution of her property as would be for public benefit within the scope of established charitable uses.

The provision in the descripition of the corporations, organizations and trusts to which the income is to be distributed, that they shall be such as "under the federal and state succession . . . tax laws at the time of my death or at the time they are assessed are exempt from taxation" is not very fortunately expressed. The wording of the requirement that those

to whom the income is directed to be distributed must be "exclusively devoted to religious, charitable, scientific, literary, historical or educational purposes, including the encouragement of art," is apparently taken from the federal estate tax law. U. S. C. A., Title 26, § 412 (d). Under that act such corporations are not in any strict sense exempt from taxation; the tax imposed by it is one laid upon the transfer of the net estate of a deceased person, after certain deductions have been made, including gifts to corporations within the description just quoted, and the tax is payable by the executor. Except perhaps, where there is an applicable state statute or a provision in the will, the burden of it falls upon the residue, even though that residue be given to one of the described corporations. In such a case the only benefit to the residuary beneficiary results from the fact that in determining the net tax the amount of the residue would be deducted. *United States* v. *Woodward*, 256 U. S. 632, 635, 41 Sup. Ct. 615; *Y. M. C. A.* v. *Davis*, 264 U. S. 47, 50, 44 Sup. Ct. 330; *Edwards* v. *Slocum*, 264 U. S. 61, 44 Sup. Ct. 293.

As the law stands today a strict application of the language of the will would mean that there are no corporations, organizations or trusts which could meet the test. That would be entirely to defeat the will of the testatrix. The terms of the gift, and particularly the description of the tax laws as including not only those applicable at the death of the testatrix but also those in effect at the time the taxes might be assessed, show that she was thinking beyond the incidence of such taxes upon her own estate and that she did not have especially in mind the financial benefit by reason of the deductions to the corporations, organizations and trusts which were throughout the future to receive the income of the trust, but that she was rather adopt-

ing the language of that law to describe the particular type of beneficiary she intended. The use of the word "exempt" was inaccurate but it was a natural mistake to make. Indeed, the word is used by Justice Holmes with reference to such deductions in *Edwards* v. *Slocum,* supra, 68 L. Ed. 564. The testatrix evidently intended to describe as recipients of the income, corporations, organizations and trusts, gifts to which under the federal law would be deducted in determining the net estate upon the basis of which the tax would be payable.

The significance of the language used to our present inquiry lies, however, in the fact that the basis of such deduction is the public and charitable nature of the gifts. The federal law does not stop with the description of the beneficiaries which we have quoted but adds, "no part of the net earnings of which inures to . . . any private stockholder or individual." The underlying purpose of the provision for the deduction of "altrustic gifts," to adopt the words used in *Y. M. C. A.* v. *Davis,* supra, is to benefit those organizations which serve a public and not a private or individual purpose. *Kemper Military School* v. *Crutchley,* 274 Fed. 125, 127. The use of the word "exempt" is proper with reference to our own law imposing succession taxes, for it does exempt gifts to corporations, institutions, societies, associations or trusts formed for charitable, educational, literary, historical or religious purposes, if the property transferred is to be used exclusively for one or more of those purposes and if no officer, member, shareholder or employee of the corporation is to derive any pecuniary profit from its operation except reasonable compensation for services or as proper beneficiaries of a strictly charitable purpose. General Statutes, § 1367; Cum. Sup. 1935, § 489c. The inclusion in the description of the corporations, organi-

zations or trusts to which the income might be distributed under the will of the requirement that they shall be "exempt" from federal and state transfer and inheritance taxes establishes beyond question the intent of the testatrix that only such corporations, organizations or trusts as are exclusively devoted to charitable uses are entitled to receive the income. To give effect to that intent we so construe the terms of the will before us.

Similar conclusions have been reached in other jurisdictions in cases quite analogous to the one before us. In *Matter of Frasch*, supra, the court had before it a clause in a will creating a fund the net income of which was to be paid to one or more incorporated institutions in the United States upon condition that it was agreed that the money so received should be devoted to research in the field of agricultural chemistry, with the object of obtaining results which would be of practical benefit to the agricultural development of the United States; it was objected that there were private corporations which might carry on such research and so fall within the terms of the will; the court, however, construed the will as applying only to those corporations which would apply the sums to public use, saying (p. 186): "Any institution to which income of the bequest is paid must apply it to a public use. No institution not authorized to apply to such use the moneys received by it could have been within the intention of the testatrix." In *Irwin* v. *Swinney*, 44 Fed. (2d) 172, affirmed sub nomina *Gossitt* v. *Swinney*, 53 Fed. (2d) 772, the residue of the testator's estate was given to trustees to further and develop "such charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library or research purposes . . . as [they] shall determine to be in the public interest," and, against the same objec-

tion as was made in the *Frasch* case, the court held that the income of the fund could be used only for charitable uses, saying (p. 177): "As to the first of the questions in the case, then, I conclude that the trustees under this will can expend the funds committed to them only for purposes strictly charitable within the technical legal meaning of that term." In *St. Louis Union Trust Co.* v. *Burnet*, 59 Fed. (2d) 922, the court had before it a provision in the will directing trustees to devote a fund "to such benevolent purposes as, in their opinion, will constitute a fitting testimonial or memorial for me and, in some degree, extend my usefulness and helpfulness to others;" and, against the same objection (p. 928), the gift was construed as limited to charitable uses.

In *Chicago Bank of Commerce* v. *McPherson*, 62 Fed. (2d) 393, the provision of the will before the court gave the trustees of a fund discretion to disburse the principal and income for such charitable, benevolent, educational and public welfare uses as they might elect; and, again against the same objection, the court held that the will established a charitable trust, saying (p. 397): "We think it clear, having in mind all of the considerations enumerated, and being guided by the rule that we must give effect to the testator's intention if it can be ascertained, that the Ruggles will discloses an intention to devote the entire estate to charitable uses in the broadest sense, and that there is entirely absent any indication of a purpose either to direct or to permit the trust funds to be used for a private purpose or a public purpose not charitable." In *Rhode Island Hospital Trust Co.* v. *Metcalf*, 48 R. I. 411, 137 Atl. 875, the will before the court gave the residue in trust to such institutions in the State as the trustee deemed proper provided they should be organized by the board of education of the

State and had an established course in either technical, industrial, household or domestic training, and the court, construing the word institution, said (p. 415): "If the meaning of the word 'institution' is not clear, the will before us, as we have already pointed out, contains language showing an intention to benefit not a school conducted for private profit but an educational institution, which is public in its nature, and thereby render aid to boys and girls in obtaining an education."

As under the terms of the will the income of the residuary estate can be distributed only to the described corporations, organizations or trusts under such circumstances that it must be devoted exclusively to charitable uses, the fact that the duration of the trust is unlimited in time does not affect its validity. General Statutes, § 5000; *Coit* v. *Comstock,* supra, 377; *City National Bank* v. *Bridgeport,* 109 Conn. 529, 544, 147 Atl. 181; *Brooks Bank & Trust Co.* v. *Beers,* 120 Conn. 477, 481, 181 Atl. 391; Restatement, Trusts, Vol. 2, § 365; 2 Bogert, Trusts & Trustees, § 352.

To the first question stated in the reservation, asking whether the uses for which the property is devised and bequeathed in the will are charitable uses, we answer "Yes." To the second question, asking whether the uses are void because of uncertainty or indefiniteness, we answer "No." To the third question, asking whether the uses created are void under the rule against perpetuities, we answer "No." To the fourth question, asking whether the provisions of the will create and establish a valid trust, we answer "Yes."

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.