THE FIDELITY TITLE AND TRUST COMPANY, EXECUTOR (ESTATE OF THEODORE SCHROEDER) *v.* ETHEL CLYDE ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

248

Argued February 7—decided March 13, 1956

*Jack H. Courage,* for the appellant (named defendant).

*Sidney Vogel,* for the appellant (defendant Leslie Kuhn).

*Morgan P. Ames,* for the appellee (defendant Hortense Schroeder Hawkes).

*George W. Oberst,* for the appellee (defendant Caroline Schroeder Warden).

*Gordon R. Paterson* appeared for the plaintiff but did not argue the cause.

O'SULLIVAN, J. Theodore Schroeder of Greenwich died on February 10, 1953, leaving a will dated April 16, 1952, which he had drafted in his own handwriting on a stock legal form. The will was admitted to probate on March 3, 1953, and the plaintiff qualified as executor. All debts of the estate and the administration expenses have been paid and there is now on hand for distribution the sum of $36,412.03. The plaintiff brought this action seeking a construction of the will, which is recited in full below.[1] From a judgment construing it adversely to their claims,

---

[1] "LAST WILL AND TESTAMENT,

I, Theodore Schroeder, of Frederiksted V. I. and of the Town of Greenwich in the County of Fairfield in the State of Connecticut, being of lawful age, of sound and disposing mind, memory and judgment, do hereby make, publish and declare this to be my last Will and Testament, hereby revoking all previous wills and codicils by me made. If I have any property left after the payment of my debts, I give devise and bequeth the same to Ethel Clyde of Huntington N.Y. and Leslie Kuhn of New York City N.Y. to be expended in the collection and arrengement, and publication of my writing. I have confidence in their judgement and honesty. I therefore request that be allowed to serve without bond.

I appoint The Fidelity Title & Trust Co of the Town of Stamford County of Fairfield and State of Conn. executor of this my Last Will and Testament

In Witness Whereof I have hereunto set my hand and seal at this 16 day of April A. D. 1952

THEODORE SCHROEDER          (L.S.)"

the defendants Ethel Clyde and Leslie Kuhn have appealed to this court.

The finding is not subject to material correction. The facts may be stated as follows: Schroeder died at the age of eighty-eight. He was a member of the New York bar. He retired from the practice of law in 1904, and thereafter devoted his time to writing. In 1911 he privately published a book entitled "Obscene Literature and Constitutional Law." The book was used at the University of Wisconsin Law School and the New York Law School. In 1914 he became interested in psychology. From then until his death he wrote numerous articles on various phases of that subject, although he had no special training in psychology other than that acquired through contact with the superintendent of the federal hospital for the insane at Washington, D.C. At his own expense he had some of his writings printed in pamphlet, and others in book, form. A bibliography listing his writings up to 1928 was published in 1934. Some of the titles of the articles so listed were "Erotogenesis of Religion," "Divinity in Semen," "Why Priests Don't Marry," "Shaker Celibacy and Salacity," and "Phallic Worship to Secularized Sex."

In the later years of his life, Schroeder met the defendants Clyde and Kuhn, and in 1951 they published for him a book entitled "What About You?" This was a compilation which consisted, in part, of articles criticizing religious beliefs, questioning the existence of God, and pointing to the stupidity of man in praying to God. The titles of certain of its chapters were "The Love-Hate Complex," "Three Attitudes toward Sex," "Why Is Obscenity?" "Where Is Obscenity?" " 'Obscenity' and Mental Health," "My Bigotry," and "My Envy."

At the time of Schroeder's death, Kuhn was preparing for publication another book consisting of reprints of articles written by Schroeder. These were directed mainly against the Mormon Church, although, to a less degree, they were critical of the Catholic Church. The headings of the articles were "Incest in Mormonism," "Polygamy in Congress," "Polygamy and the Constitution," "Polygamy and Inspired Lies," "The Sex-Determinant in Mormon Theology," "Mormonism and Prostitution," "Proxies in Mormon Polygamy," "Was Joseph Smith, 'The Prophet,' an Abortionist?" "Sadism in Mormonism," and "Sanctified Lust."

Schroeder left a large number of pamphlets and manuscripts which have not even been catalogued. He considered himself a controversialist and had a strong desire to have whatever he wrote published. He had no interest in his heirs, the defendants Hortense Schroeder Hawkes and Caroline Schroeder Warden. They were his first cousins and both survived him.

The court answered the questions[2] propounded in

---

[2] The questions which the plaintiff submitted to the court were the following:

"(a) Do the provisions of said will constitute an absolute devise and bequest of the decedent's residuary estate to Ethel Clyde and Leslie Kuhn?

"(b) Do the provisions of said will create a valid trust?

"(c) If a valid trust is created, must Ethel Clyde and Leslie Kuhn qualify as trustees in the manner provided by law?

"(d) If a valid trust is created, and said Ethel Clyde and Leslie Kuhn or either of them refuse to accept said trust, or, having qualified, fail or are unable to discharge their duties as such trustee, does the Probate Court for the District of Greenwich have the power to appoint a substituted trustee or trustees as the case may be or is said trust so discretionary in its nature that its provisions can be performed only by the said Ethel Clyde and Leslie Kuhn or either of them?

"(e) If a valid trust is created, may the trustees sell any publica-

the complaint in such a manner as to hold that the fund of $36,412.03 presently in the hands of the executor is intestate estate and is therefore distributable to the defendants Hawkes and Warden as the sole heirs at law of the testator.

As previously stated, the defendants Kuhn and Clyde have appealed. It is the contention of the former that the provisions of the will constitute an absolute gift, and that he and the defendant Clyde are entitled to the fund available for distribution free of any trust or other legal restraint, although subject to a moral obligation arising out of their relations with Schroeder concerning the proposed publication of certain of his articles. The theory behind this contention is that the testator made a gift to Kuhn and Clyde, couching it in precatory language which is insufficient to create a trust. It is, of course, true that certain requisites are needed to convert precatory language into a valid trust. *Seymour* v. *Sanford,* 86 Conn. 516, 522, 86 A. 7. It is

---

tions, collected, arranged and published by them or must such publications be distributed without charge?

"(f) If a valid trust is created, must the trustees account for their expenditures to the Probate Court for the District of Greenwich and what person or persons would be entitled to enforce the provisions of said trust and see that the same are fully and faithfully discharged by said trustees?

"(g) If a valid trust is otherwise created, does the same constitute an estate in perpetuity violative of the laws of the State of Connecticut?

"(h) If a valid trust is created and the same does not constitute a violation of the laws of the State of Connecticut with respect to perpetuities, within what period of time must the trustees expend the entirety of the residuary estate as directed by said will?

"(i) If the provisions of said will fail to create a valid trust, shall the executor pay over and distribute the estate to the heirs at law of said decedent who may be entitled thereto?"

---

Of the foregoing nine questions, the court answered "No" to (a) and (b), and "Yes" to (i). It did not answer the other questions.

likewise true that precatory words cannot ordinarily cut down or diminish an estate given absolutely. *Peyton* v. *Wehrhane,* 125 Conn. 420, 425, 6 A.2d 313; *Loomis Institute* v. *Healey,* 98 Conn. 102, 115, 119 A. 31. The weakness of Kuhn's contention, however, is that it tortures what the testator said in his will and, by warping his words, reaches a construction at odds with his expressed intent. For the real question is not what the testator meant to say, but what he meant by what he said. *First National Bank & Trust Co.* v. *Parish of St. Thomas' Church,* 141 Conn. 489, 497, 107 A.2d 246; *Mitchell* v. *Reeves,* 123 Conn. 549, 556, 196 A. 785. Effect is given to the intent which finds expression in the language used. *Conway* v. *Emeny,* 139 Conn. 612, 618, 96 A.2d 221.

In the light of these principles, it is obvious that the defendants Kuhn and Clyde were not to receive an absolute gift. "If I have any property left after the payment of my debts," runs the will, "I give devise and beque[a]th the same to Ethel Clyde of Huntington N.Y. and Leslie Kuhn of New York City N.Y. to be expended in the collection and arr[a]ngement, and publication of my writing. I have confidence in their judgement and honesty. I therefore request that [they] be allowed to serve without bond." Had an absolute gift been intended, the testator would hardly have requested that the legatees be allowed "to serve without bond," nor, in all probability, would he have expressed confidence in their judgment and honesty. The significance of the phrase "to serve without bond" is apparent. It points unmistakably to the use which the recipients were to make of the bequest. It demonstrates beyond peradventure that the testator gave the residue of his estate to Kuhn and Clyde for the purpose of carrying out a trust, and the trust was to collect,

arrange and publish his "writing." It is of no moment that the testator failed to use the word "trust" or "trustee," as long as the will, viewed as a whole, discloses that his purpose was to create a trust. *Shannon* v. *Eno,* 120 Conn. 77, 81, 179 A. 479; *Ryder* v. *Lyon,* 85 Conn. 245, 250, 82 A. 573; 3 Pomeroy, Equity Jurisprudence (5th Ed.) p. 1101. If distributed to Kuhn and Clyde, the fund would carry with it the duty of using it in accordance with the testator's directions, and these may not be regarded as merely precatory. *FitzGerald* v. *East Lawn Cemetery, Inc.,* 126 Conn. 286, 289, 10 A.2d 683. The court was correct in holding that the bequest to the defendants Kuhn and Clyde was not an absolute gift.

This brings us to a consideration of the nature of the trust which the testator set up. If it is a private trust, its validity cannot be sustained, because he neglected to designate beneficiaries who would be definitely ascertainable either at the time of his death or within the period of the rule against perpetuities. *Bristol* v. *Bristol,* 53 Conn. 242, 254, 5 A. 687; 1 Perry, Trusts & Trustees (7th Ed.) p. 642, § 383; 1 Pomeroy, Equity Jurisprudence (5th Ed.) § 152; 1 Scott, Trusts, § 112; 54 Am. Jur. 114, § 136; see *Bryan* v. *Bigelow,* 77 Conn. 604, 616, 60 A. 266. Recognizing this, the defendant Clyde contends that the trust is charitable or, as she states in her brief, it is "an educational trust for charitable purposes." Concededly, a trust for the advancement of education is charitable. Restatement, 2 Trusts § 370. We have always held to that principle. "At least ever since the Statute of Elizabeth (43 Elizabeth, Chap. 4) gifts for religious purposes have been regarded as charitable. . . . This is also true of gifts for educational purposes." *Mitchell* v. *Reeves,* 123 Conn. 549, 553, 196 A. 785. We have

frequently been called upon to put the principle into practice.[3]

In the light of the liberal construction we give to our statute of charitable uses (General Statutes § 6882), a trust to promote the dissemination of knowledge or of beliefs through the distribution of books or pamphlets may, in the absence of any profit element, qualify as a valid charity. Restatement, 2 Trusts § 370, comment a; note, 12 A.L.R.2d 849, 861. And in those instances where the purpose for which the trust was created constitutes a valid charitable use, the educational value of the books or pamphlets to be distributed is ordinarily of no concern to the court, nor is the literary merit of the material a proper subject of judicial inquiry.

If, however, a public charity is to be upheld, it must be consistent with public policy. Zollmann, American Law of Charities, § 210. The law will not declare a trust valid when the object of the trust, as the finding discloses, is to distribute articles which reek of the sewer. The very enumeration of some of the titles which Schroeder selected for his writings brands them indelibly, and a reading of the article which he called "Prenatal Psychisms and Mystical Pantheism" is a truly nauseating experience in the field of pornography. The trust is invalid as being contrary to public policy.

The further claim of the defendant Clyde is that if the gift has failed as a charitable trust, the will

[3] See *Waterbury Trust Co.* v. *Porter*, 131 Conn. 206, 213, 38 A.2d 598; *Westport Bank & Trust Co.* v. *Fable*, 126 Conn. 665, 673, 13 A.2d 862; *Mitchell* v. *Reeves*, 123 Conn. 549, 553, 196 A. 785; *Lyme High School Assn.* v. *Alling*, 113 Conn. 200, 204, 154 A. 439; *Hoyt* v. *Bliss*, 93 Conn. 344, 350, 105 A. 699; *Treat's Appeal*, 30 Conn. 113, 116; *First Congregational Society* v. *Atwater*, 23 Conn. 34, 40; *American Asylum* v. *Phoenix Bank*, 4 Conn. 172, 177.

should then be construed as setting up an honorary trust, so-called. A "trust" of that type is not a true trust. It does not conform to the time-honored essential of the law that there be a beneficiary or beneficiaries capable of enforcing its terms. In jurisdictions which recognize it, an honorary trust is held to arise when the recipient of a gift is directed —as distinguished from requested—to use it for a definite purpose, such as, for example, caring for the testator's dog. Some authors take the position that the gift is valid and that the would-be trustee has the power, but not a duty, to apply the gift to the purpose stated by the testator. 1 Scott, Trusts, § 124; 2 Simes, Future Interests, § 555; Ames, "The Failure of the 'Tilden Trust,'" 5 Harv. L. Rev. 389. Others take a contrary view. 1A Bogert, Trusts & Trustees, § 166; Gray, "Gifts for a Non-Charitable Purpose," 15 Harv. L. Rev. 509. The validity of such "trusts" has, until now, been neither recognized nor rejected in this state. But see *Alexander* v. *House,* 133 Conn. 725, 728, 54 A.2d 510; *Coit* v. *Comstock,* 51 Conn. 352, 386. We need not, however, determine the matter as an issue presented in the case at bar. The reason is this: Since we hold that a valid charitable trust cannot be supported because the purpose of the trust would be contrary to public policy, it inevitably follows that the purpose would be just as contrary to public policy were it to be accomplished by any other method—for example, by an honorary trust. The illegality permeates the gift no matter what form it takes. Gifts devoted to illegal objectives are void. 1 Jarman, Wills (8th Ed.) p. 223; 3 Page, Wills (3d Ed.) p. 534; 1 Perry, Trusts & Trustees (7th Ed.) § 21; Restatement, 1 Trusts §§ 60, 62.

The answers given by the court were correct.

There is no error.
In this opinion the other judges concurred.